UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MANSOOR ALGHOONEH et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE et al., <br><br> Defendants. | Case No. 25-10878 <br> Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS [5], GRANTING PLAINTIFFS' UNOPPOSED MOTION TO STAY [10], AND TRANSFERRING CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Husband and wife Mansoor Alghooneh and Masoumeh Esfandiari are ready and willing to bring their extensive expertise in vehicle safety to Michigan, home of the "Motor City." Alghooneh has a job offer from a university research lab here, and both he and his wife, current employees at General Motors of Montreal, want to transfer to GM in Michigan. So in 2020, Alghooneh applied for an employment-based immigrant visa, with his wife and their minor son as derivative beneficiaries. Giving new meaning to the term bureaucratic gridlock, the Plaintiffs' applications remain pending five years later. Understandably frustrated, they filed this action claiming the excessive delay violates the Administrative Procedure Act and due process clause of the U.S. Constitution. (ECF No. 1.)

Defendants move to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). (ECF No. 5.) The motion is fully briefed (ECF Nos. 8,

9) and does not require further argument. E.D. Mich. LR 7.1(h). While the Court is loath to cause any further delay, it is constrained to find that venue is improper in this District, *see* 28 U.S.C. § 1391(e)(1), and transfers this case to the District of Columbia pursuant to 28 U.S.C. § 1406(a).

## I.

Mansoor Alghooneh, Masoumeh Esfandiari, and their minor son L.A.E.A. are citizens and residents of Canada. (ECF No. 1, PageID.2.) Alghooneh and Esfandiari currently work for General Motors of Montreal, where they "actively contribute to innovations in vehicle safety" (ECF No. 8-1, PageID.98)—Alghooneh as a prognostics data engineer in the Chassis and Propulsion Prognostics department (ECF No. 8-3) and Esfandiari as a software development manager in the Occupant Comfort, Position & Protection Controls department (ECF No. 8-4).

Alghooneh holds a Ph.D. in engineering (ECF No. 8-1, PageID.97) and is a prolific research scientist and inventor, *see Google Scholar Profile: Mansoor Alghooneh*, Google Scholar, https://perma.cc/42TR-SGW4. He "led the design and invention of a software system capable of detecting tire leaks to help prevent tire blowouts," and, thanks to his work, GM was "the first company to implement this technology . . . which is now protected by a U.S. patent." (ECF No. 8-1, PageID.97–98.)

Innovations like that one earned Alghooneh a job offer from the experimental mechanics laboratory at Kettering University in Flint, Michigan. (*Id.* at PageID.98; *see* ECF No. 8-2.) The lab's director seeks to hire Alghooneh as a research scientist to

"utilize [his] expertise in control systems, robotics, and machine learning to develop and invent advanced algorithms, software, sensors, and actuators to enhance active safety systems for passenger vehicles" and to mentor the next generation of undergraduate and graduate engineering students. (ECF No. 8-2.) Alghooneh avers that the position is "aligned with [his] mission to advance road safety through cutting-edge research." (ECF No. 8-1, PageID.98.)

Esfandiari shares that mission. She seeks to transfer from GM in Montreal to GM in Michigan so she may "more broadly and more directly benefit vehicle safety and intelligence . . . within the U.S. auto industry" and "fully utilize [her] specialized skills for the greater public good by helping make vehicles safer and smarter, ultimately saving lives." (*Id.*) Alghooneh likewise seeks to transfer to GM in Michigan, either in addition to or following the university position. (*See id.*)

In turn, on October 19, 2020, Alghooneh filed an I-140 immigrant visa petition with his wife and son as derivative beneficiaries. (ECF No. 1, PageID.3–4.) Their employment-based visa petition was approved by USCIS on August 31, 2021. (ECF No. 1, PageID.4; *see also* ECF No. 8-1, PageID.97 (affidavit by Alghooneh) ("I am the beneficiary of an approved I-140 Immigrant Petition for Alien Worker under EB2 National Interest Waiver category.").) The approved application was processed by the State Department, and on March 19, 2024, Plaintiffs completed their visa interviews at the U.S. Consulate in Montreal. (ECF No. 1, PageID.4); *see* 8 C.F.R. § 204.5(n)(1) ("An approved employment-based petition will be forwarded to the National Visa Center of the Department of State if the beneficiary resides outside of the United

3

States."); 22 C.F.R. § 42.62 (describing immigrant visa applicant interviews). "Following the interviews, the consular officer requested additional information and Plaintiffs submitted their response shortly after." (ECF No. 1, PageID.4; *see* ECF No. 5, PageID.46); *see also* 8 U.S.C. § 1201(g) (authorizing initial or temporary refusal of visa issuance based on insufficient information); 22 C.F.R. § 42.81 (implementing regulation for such nonissuance of immigrant visa).

But Plaintiffs never received a final decision on their visa applications. (ECF No. 1, PageID.4.) So on March 28, 2025, over a year after their visa interviews (and almost 4.5 years after filing their visa applications), Plaintiffs brought this mandamus action. (*See* ECF No. 1; *see also* ECF No. 8, PageID.79 ("Plaintiffs have contacted the agency multiple times, all to no avail. Frustrated with the lack of movement in their cases and very eager to contribute to the U.S. workforce and economy, Plaintiffs filed the Complaint . . . ." (citation omitted)).)

They assert two claims—unreasonable delay in the adjudication of their visa applications in violation of the Administrative Procedure Act (*see* ECF No. 1, PageID.4–6) and "failures to provide a reasonable and just framework of adjudication" in violation of the due process clause of the Fifth Amendment (*id.* at PageID.6). They sue four defendants: the U.S. Department of State, Secretary of State Marco Rubio, the U.S. Consulate General in Montreal, Canada, and Consul General Robert P. Sanders.

4

In June of 2025, Defendants moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) for improper venue and failure to state a claim. (ECF No. 5.) Plaintiffs oppose the motion. (ECF No. 8.)

For the reasons below, and without expressing any view on the merits of Plaintiffs' complaint or Defendants' arguments under Rule 12(b)(6), the Court will grant Defendants' motion to dismiss under Rule 12(b)(3).

## II.

When a lawsuit is brought against a federal agency or official and no real property is at issue, venue is proper in the judicial district where a defendant or plaintiff resides, *see* 28 U.S.C. § 1391(e)(1)(A), (C), or where "a substantial part of the events or omissions giving rise to the claim occurred," *id.* § 1391(e)(1)(B). Defendants assert that none of these bases make the Eastern District of Michigan a proper venue and that "the only proper venue" is the District of Columbia. (ECF No. 5, PageID.49–50.) Plaintiffs fail to carry their burden of showing venue is proper here. *See Tobien v. Nationwide Gen. Ins. Co.*, 133 F.4th 613, 619 (6th Cir. 2025) ("[W]hen a defendant challenges the venue, the plaintiff bears the burden of proving venue by a preponderance of the evidence.").

Start with subsection (A).

It is undisputed that no Defendant resides in this District. (*See* ECF No. 5, PageID.48 (asserting that Defendants reside in Washington, D.C., and Montreal, Canada, for venue purposes); ECF No. 8, PageID.82–83.) For venue purposes, agencies and agency heads reside where they "maintain [their] official residence," i.e.,

5

"perform[] [their] official duties." *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). That generally makes federal officials and agencies—like defendants Secretary of State Rubio and the U.S. Department of State—"residents" of the District of Columbia under § 1391(e). *See Greene v. U.S.P.S.*, 745 F. App'x 299, 300 (10th Cir. 2018) ("[T]he 'residence' of a federal agency is ordinarily limited to the District of Columbia." (citing *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264, 267 (7th Cir. 1978))); *AF, Inc. v. U.S.C.I.S.*, No. 23-13009, 2025 WL 308118, at *8 (E.D. Mich. Jan. 27, 2025) ("[W]here USCIS resides, i.e., performs a significant amount of its duties[,] [is] presumably in the District of Columbia area where its headquarters is located . . . ."); *Hanarvar v. U.S. Embassy & Consulate in the U.A.E.*, No. 25-10218 (E.D. Mich. May 2, 2025), ECF No. 5, PageID.44 (collecting cases); *cf. Stafford v. Briggs*, 444 U.S. 527, 536–43 (1980). Plaintiffs do not contend otherwise. Nor do they contend that the U.S. Consulate General in Canada or Consul General Sanders "reside" in the Eastern District of Michigan.

Plaintiffs argue instead that venue is proper in this District because of their "inten[t] to reside" here and "significant ties to the state." (ECF No. 8, PageID.82.) They emphasize that Alghooneh has a job offer to serve as a research scientist at Kettering University in Flint, Michigan (*id.*), and that both he and his wife, who currently work at General Motors of Canada, "are eager to transfer their roles and skills to the Michigan location" (*id.* at PageID.83). It is unclear whether Plaintiffs contend that these facts make them "residents" of the Eastern District of Michigan for venue purposes, *see* 28 U.S.C. § 1391(e)(1)(C), or that "a substantial part of the

6

events or omissions giving rise to the claim occurred" in this District, *id.* § 1391(e)(1)(B). But neither argument is availing.

Under subsection (B), Plaintiffs fail to establish that their forward-looking ties to this District, as genuine and strong as they may be, form a legally sufficient basis for venue to lie here.

Instead, the "events or omissions giving rise to the claim," 28 U.S.C. § 1391(e)(1)(B), are the delays in processing Plaintiffs' visa applications—which are occurring outside of this District. *See Hanarvar*, No. 25-10218, ECF No. 5, PageID.45 (concluding that "the act or omission giving rise to the claim is the delay in processing Plaintiff's visa, which is almost certainly occurring either in the UAE [where plaintiff lives and had his visa interview] or in the District of Columbia" and rejecting argument that, because plaintiff sought visa to visit Michigan-based family, any events giving rise to his mandamus claim occurred in Michigan); *AF, Inc.*, 2025 WL 308118, at *8 (concluding that venue was improper in the Eastern District of Michigan, despite plaintiff's job offer and intent to reside here, and finding under subsection (B) that venue would be proper either where his or his family's visa applications were adjudicated); *Chorostecki v. Blinken*, 742 F. Supp. 3d 1078, 1081 (C.D. Cal. 2024) ("[T]his claim arises from the delay of [Plaintiff's] visa application, which took place entirely outside the United States, and in the U.S. Consulate in Montreal, Canada."); *Fang v. Rubio*, No. 25-05151, 2025 WL 2772860, at *2 (N.D. Cal. Sept. 29, 2025) ("Subsection (B) does not apply because Plaintiff's claims are based on events and omissions that occurred in China, specifically at the United States

7

Embassy in Shanghai [where plaintiff had visa interview]."); *Kiyaroudi v. Rubio*, No. 25-0091, 2025 WL 1434380, at *3 (W.D. Wash. May 19, 2025) (finding subsection (B) inapplicable and reasoning that "the relevant conduct occurred in Auckland, New Zealand, where [Plaintiff] applied for his visa, underwent an interview, and received notice that his application had been refused and required administrative processing"). Put another way, the basis for this suit is the adjudication of Plaintiffs' visa petitions (and Defendants' allegedly unreasonable delays therein). Plaintiffs fail to show that "the events or omissions giving rise to the claim" contemplated under subsection (B) include their intent to reside and work in this District following that adjudication.

Nor have Plaintiffs shown that their intent to reside in this District makes them residents under subsection (C). "The venue statute . . . does not contemplate jurisdiction in which plaintiff intends to reside—only where 'plaintiff resides.'" *Scarlett v. Nat'l Sci. Found. Off. of Inspector Gen.*, No. 22-188, 2022 WL 17830227, at *5 (D.D.C. Dec. 21, 2022) (quoting 28 U.S.C. § 1391(e)(1)(C)). Even accepting Plaintiffs' argument that "[s]ome case law supports the determination that venue is appropriate in a district because the noncitizen plaintiff *lives within that district*" (ECF No. 8, PageID.82 (emphasis added)), such cases are inapplicable here—because Plaintiffs acknowledge they are "currently residing in Ontario, Canada" (ECF No. 1, PageID.2). *Compare Hanarvar*, No. 25-10218, ECF No. 5, PageID.45 ("[Plaintiff] is an Iranian national living in Tehran, so venue is not proper here under § 1391(e)(1)(C)."), *with Kalantari v. Rubio*, No. 25-01341, 2025 U.S. Dist. LEXIS

8

126448, at *3 (C.D. Cal. June 30, 2025) (finding that plaintiff seeking I-140 immigration visa "adequately demonstrated that he resides in this district" where he alleged that "his permanent home is in this district with his family" but that he was merely "stranded outside the United States" and "temporarily unable to return").

True, some courts have concluded that a noncitizen "lawfully admitted for permanent residence in the United States," 28 U.S.C. § 1391(c)(1), who "objectively manifest[s] an intent to make permanent his residence here can claim residence for purposes of the venue statute," *Luna v. United States*, No. 20-1152, 2021 WL 673534, at *2 (W.D. Wash. Feb. 22, 2021). And at least one court in this Circuit has found that a noncitizen may establish residency under the venue statute even without permanent resident status. *See Tanyike v. United States*, 603 F. Supp. 3d 572, 578 (S.D. Ohio 2022). But in all these cases, including the ones cited by Plaintiffs (ECF No. 8, PageID.82 (citing *Kumar v. Mayorkas*, No. 12-06470, 2013 WL 5313718, at *4 (N.D. Cal. Sept. 23, 2013); *Gu v. Napolitano*, No. 09-2179, 2009 WL 2969460, at *3 (N.D. Cal. Sept. 11, 2009))), the plaintiffs were already living in the judicial district in which they filed suit. *See Kumar*, 2013 WL 5313718, at *4 ("[I]t is undisputed that Mr. Kumar resides within the Northern District of California . . . ."); *Gu*, 2009 WL 2969460, at *4 (same); *Coyoy v. United States*, 526 F. Supp. 3d 30, 33, 41 (D.N.J. 2021) (explaining that "[t]he United States does not dispute that the plaintiff . . . is a natural person who lives in New Jersey," *id.* at 33, and holding that "a natural person is a resident of any district in which he or she is lawfully domiciled. Such a person is one who, even if not a legal permanent resident, *lives in the district* and possesses a

9

lawful intent to remain," *id.* at 41 (emphasis altered)); *Tanyike*, 603 F. Supp. 3d at 578 (same, *see id.* at 578, where plaintiff "currently lives in Dayton," *id.* at 580). Again, it is undisputed that Plaintiffs live in Canada and are not yet lawfully present in the United States, let alone in this District. *See Fang*, 2025 WL 2772860, at *2 (concluding that plaintiff had not overcome Ninth Circuit's rebuttable presumption that a noncitizen "does not reside in any judicial district" for venue purposes where plaintiff provided both home and employment addresses in the judicial district but was still living in China); *Chorostecki*, 742 F. Supp. 3d at 1082 (same, where plaintiff owned a residence in the judicial district but "ha[d] not actually moved to Los Angeles," and distinguishing cases "involv[ing] plaintiffs who actually resided in the judicial districts in which they filed").

In sum, the plaintiffs have not carried their burden of showing venue is proper in the Eastern District of Michigan under any subsection of 28 U.S.C. § 1391(e)(1).[1]

The Court will exercise its discretion to transfer the case rather than dismiss it. *See Dayton Area Chamber of Com. v. Kennedy*, 147 F.4th 626, 635 (6th Cir. 2025) ("A district court generally has broad discretion in determining whether to dismiss or transfer a case for lack of proper venue."). As Defendants put it, "the Court may transfer this action to the District of Columbia, the only proper venue here." (ECF No. 5, PageID.49–50); *see Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 813 (E.D. Mich.

---

[1] "[B]ecause venue is improper in this district, the Court . . . declines to rule on the merits of [defendants'] 12(b)(6) argument." *AF, Inc.*, 2025 WL 308118, at *9 (collecting cases).

2000) ("This Court will not dismiss this civil action for lack of venue because an alternate appropriate forum easily can be found . . . .").

Here, especially given the delay that Plaintiffs have already experienced, the Court finds that such a transfer is "in the interest of justice" under 28 U.S.C. § 1406(a). *See United Liberty Life Ins. Co. v. Pinnacle W. Capital Corp.*, 149 F.R.D. 558, 562 (S.D. Ohio 1993) ("[T]he interest of justice is generally better served by transfer than by dismissal."); *Stanifer v. Brannan*, 564 F.3d 455, 459–60 (6th Cir. 2009) (explaining that "the presumption should be in favor of transfer as the normal procedure" as long as the plaintiff had "some arguable basis for thinking that the action was properly brought in the district in which it was originally filed"); *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 16-03153, 2017 WL 4512501, at *4 (M.D. Tenn. Oct. 10, 2017) ("[T]ransferring the case would serve the purpose of § 1406: to remove obstacles from the expeditious adjudication of cases and controversies on their merits." (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962))).

One final note. As the Court was preparing to enter this opinion, Plaintiffs filed an unopposed motion to stay further proceedings because some progress had finally been made on the applications. (ECF No. 10, PageID.111 ("On October 28, 2025, the Embassy requested Plaintiffs to submit updated medical exams and their passports. Plaintiffs are actively working on their submission to the Embassy's request.").) Thus, this Court will GRANT Plaintiffs' consent motion to stay proceedings (ECF No. 10.) As agreed to in that motion, on or before December 31, 2025, Plaintiffs shall file a report "apprising the [Transferee] Court of the status of Plaintiffs' visa applications.

Depending on the result of the Department's consideration of the further information provided by Plaintiffs, Plaintiffs may dismiss the case as moot." (*Id.* at PageID.112.)

### III.

Because venue is not proper in the Eastern District of Michigan under 28 U.S.C. § 1391(e)(1), the Court GRANTS IN PART Defendants' Rule 12(b)(3) motion to dismiss (ECF No. 5) and TRANSFERS this case to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1406(a). The Court further GRANTS Plaintiffs' Consent Motion to Stay Proceedings (ECF No. 10) and thus transfers the case in a stayed posture.

SO ORDERED.

Dated: November 4, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
